UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARISOL SOLIS, individually and on behalf of
all others similarly situated,

                                                                         **MEMORANDUM & ORDER**
                      Plaintiffs,              18-cv-6130 (SJF) (AKT)

        -against-

COMMONWEALTH FINANCIAL SYSTEM,
INC. and PENDRICK CAPITAL PARTNERS, LLC,

                          Defendant.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

      Plaintiff Marisol Solis ("Plaintiff") commenced this putative class action against Commonwealth Financial System, Inc. ("CFSI") and Pendrick Capital Partners, LLC (collectively, "Defendants") alleging that Defendants have used unlawful collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* Currently before the Court is Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docket Entry ("DE") [21]. Plaintiffs have opposed the motion. For the reasons set forth herein, the motion is granted.

**I. BACKGROUND**

**A. Factual Allegations**

      The following facts are taken from the complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion. In addition, the Plaintiff has incorporated by reference in, and attached to, the Complaint a letter from CFSI dated August 15, 2018 (the "Letter"). Plaintiff is a "consumer," as defined by the FDCPA, residing in Nassau County, New York. Compl." ¶¶ 5-6. Both Defendants are "debt collectors" within the meaning of the statute. *Id.* ¶10.

Defendants allege Plaintiff owes two (2) debts incurred in 2011, primarily for medical purposes. *Id.* ¶¶ 11-12.  At some point after incurrence of the debts, Plaintiff fell behind on the payments owed, and thereafter, the debts were "assigned or otherwise transferred to Defendants for collection."  *Id.* ¶¶ 13-14.  In an effort to collect the debts, Defendants contacted Plaintiff by sending the Letter dated August 15, 2018.[1]

The one-page Letter, which is on CFSI letterhead with its address, phone number and website, has specific information in a box at the top:

| | |
|---|---|
| **CFSI File ID**: | xxxx6393 |
| **Original Creditor**: | NES MEDICAL SERVICES OF NEW YO |
| **Original Account**: | xxxxxxxxxx4520 |
| **Current Balance**: | $658.00 |
| **Service Date:** | 11/30/2011 |
| **Current Creditor**: | Pendrick Capital Partners |

The body of the Letter reads as follows, in its entirety:

> Attached is an itemized statement that you requested regarding the above identified debt that has been placed in our office for collection by the current creditor.
>
> This statement may not reflect payments made either by you or any insurance company after the service date.
>
> Please, contact me once you receive this information to discuss further.

---

[1] The Complaint alleges that there were two (2) debts involved, Compl. ¶11, and that two (2) letters were sent, both dated August 15, 2018,  *id.* ¶15, but  there is only one letter attached to the complaint.  In her opposition, Plaintiff acknowledges the discrepancy, and states that "[t]o the extent that there is any inconsistency between the allegations in paragraph 15 of the Complaint and the exhibit thereto, the exhibit governs."  Plaintiff's Memorandum of Law in Opposition ("Pl. Opp."), DE [21-2] at 3, n.1.  Accordingly, the Court treats the Letter attached as the lone basis for this litigation.

Compl. Ex.² The Letter is signed by Matthew Richardson, Collections Representative, and provides his telephone number. The bottom of the letter contains the statement that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose. This is a communication from a debt collector." *Id.*

Plaintiff alleges that the statute of limitations on the debts "began to accrue in 2011," Compl. ¶16, that the statute of limitations "ran in 2017," *id.* ¶17, and that the Letter was sent "after the statute of limitations expired." *Id.* ¶18. She further states that "[m]aking any payment on [] time-barred Debts may result in revival of Plaintiff's otherwise time-barred Debts." *Id.* ¶ 21.

**B. Procedural History**

On November 1, 2018, Plaintiff commenced this action, asserting claims under §1692e of the FDCPA. She claims that the Letter violates §1692e(2)(A)'s prohibition on the false representation of the character, amount or legal status of any debt by failing to inform her that (1) no legal action could be taken to recover the debts due to the expiration of the statute of limitations, and (2) any partial payment by Plaintiff could result in the revival of her otherwise time-barred debts. She claims that these omissions further violate §1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see also id.* § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt...").

Defendants move to dismiss the complaint pursuant to Rule 12(c). They contend that: (1) the Letter is not an attempt to collect a debt; and (2) since the Letter does not threaten legal

---

² The itemized statement referenced in the Letter is not attached to the Complaint.

3

action or offer to settle the debt, no time-bar disclosure is required.[3]  After the motion was fully briefed, Defendants submitted a Notice of Supplemental Authority that attached a case decided after the motion was filed.  *See* Notice, DE [22].   Plaintiff filed a motion to strike Defendants' Notice to the extent it contained additional legal argument as an "impermissible supplemental brief."  Motion to Strike, DE [23].  Defendants have not opposed that motion.  The motion to strike is granted to the extent that the Court declines to address any additional legal argument put forth in the Notice.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  FED. R. CIV. P. 12 (c).  In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. *See Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir. 2009).  Therefore, to survive this motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  The court accepts as true all of the factual allegations contained in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *See*

---

[3] Defendants further contend that various New York state regulations cited in the Complaint do not state a claim and should be dismissed.  Plaintiff in her opposition states she does not assert a cause of action for violation of the regulations and cites them only to illustrate for Defendants various language they could have used in the Letter.  To the extent any claim was intended, it is deemed withdrawn.

*Warren v. Colvin,* 744 F.3d 841, 843 (2d Cir. 2014). Although factual allegations are assumed to be true, this principle is "inapplicable to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

**B.  FDCPA**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).  Its legislative history "explains that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S.Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)).  "Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (internal quotations marks and citation omitted).

Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. §1692a(3).  "Debt collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012)

5

(internal quotation marks and citation omitted). "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. §1692a(2), and the term's scope should be broadly construed "consistent with Congress's intent in enacting the FDCPA." *Somerset v. Stephen Einstein & Assocs., P.C.* 352 F. Supp. 3d 201, 210 (E.D.N.Y. 2019) (*quoting Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 655 (S.D.N.Y. 2006)).

A collection notice is viewed from the perspective of the least sophisticated consumer. *See Kolbasyuk v. Capital Mgmt. Servs., LP,* 918 F.3d 236, 239 (2d Cir. 2018). The standard is "an objective analysis that seeks to protect the naïve from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005) (internal quotation marks and citation omitted). Although the least sophisticated consumer may lack "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday common consumer," *Kolbasyuk,* 918 F.3d at 239 (internal quotation marks and citation omitted), courts presume that she nonetheless possesses "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (internal quotation marks and citation omitted); *see also Dewees v. Legal Serv'g, LLC,* 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (applying the least sophisticated consumer standard, courts analyze collection letters "from the perspective of a debtor who is uninformed, naïve, or trusting, but is making basic, reasonable and logical deductions and inferences" (internal quotation marks and citation omitted)).

## III. DISCUSSION

### A. Communication in Connection with the Collection of a Debt

The threshold question presented is whether the Letter is a "communication" made "in connection with the collection of any debt." 15 U.S.C. §1692e; *see also Cohen v. Rosicki, Rosicki & Assocs., P.C.,* 897 F.3d 75, 83 (2d Cir. 2018) (liability under the FDCPA is defined "in terms of whether the debt collector's communication with the consumer is *in connection with* that consumer's obligation to pay money." (emphasis in original)). Whether a communication is "'in connection with the collection of [a] debt' is a question of fact to be determined by reference to an objective standard." *Hart v. FCI Lender Servs., Inc.,* 797 F.3d 219, 225 (2d Cir. 2015) (alteration in original). The intent or purpose of the sender is not the focus – "if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled" to the FDCPA's protections. *Hart,* 797 F.3d at 225. Consistent with the FDCPA's consumer protection goals, a court must, at the motion to dismiss stage, "view the communication objectively, asking whether [plaintiff] has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt, rather than inquiring into the sender's subjective purpose." *Id.* (internal quotation marks, citation, alteration omitted). Drawing all inferences in Plaintiff's favor, the Court finds that she has plausibly alleged that the Letter could reasonably be interpreted as being sent in connection with the collection of a debt.

In *Hart,* the Second Circuit determined that "an *attempt* to collect a debt" is a communication in connection with the collection of a debt, and decided that the letter at issue constituted such an attempt. *Hart,* 797 F.3d at 226 (emphasis in original). The Court highlighted four factors about the letter in question: (1) it referenced the plaintiff's particular debt; (2) it

7

directed him to mail payments to defendant at a specified address; (3) it referred to the FDCPA by name; and (4) "most importantly," the letter "emphatically announce[d] itself as an attempt at debt collection" by stating "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.*; *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (noting that the factors, "dispositive in *Hart,* are similarly instructive here").

Here, the Letter satisfies two *Hart* factors as it both references Plaintiff's debt and includes the debt collector's "self-identification" language stating that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose. This is a communication from a debt collector." Although the statement here does not appear in all capital letters or bold-faced type, it is essentially the same language employed in *Hart*. The least sophisticated consumer would understand the clear meaning of the Letter to be that it is, in fact, an "attempt to collect a debt." *See Hart,* 797 F.3d at 227 (noting, in regard to debt collector's self-identification statement, that there appears to be "no reason why [the court] should not take it at its word, nor any reason that a consumer would (or indeed should) fail to credit the clear language of the document"). These facts are sufficient to establish that the Letter was sent in connection with the collection of a debt and is therefore subject to the FDCPA.

Defendants argue that the Letter "is a requested—and expected—response to plaintiff's request for documents verifying the account," and thus constitutes a ministerial response to her inquiry. *See* Defendants' Memorandum of Law at 9, DE [21-1]. Even assuming that Plaintiff did request information, a fact that does not appear in the complaint, a letter can have been sent for more than one reason and will be subject to the FDCPA if one of those purposes is in connection with the collection of a debt. *See, e.g., Hart* at 226-27 (acknowledging that while Letter could

8

have a purpose beyond debt collection, "we see no reason that the Letter could not serve more than one purpose"); *Bradley v. Selip & Stylianou, LLP,* No. 17-CV-6224, 2018 WL 4958964, at *5 (W.D.N.Y. Oct. 15, 2018) (responsive letter from collector a communication in connection with a debt where it both requests additional documents and sets a ten (10) day deadline for compliance or "we may continue our efforts to collect this debt from you" and cannot conclude "that a reasonable consumer would be able to separate [defendant's] request for documents from its overall efforts to collect the debt, particularly given that [defendant] ties such request to its collection efforts").

### B. Language Regarding Time Bar

Plaintiff contends that the Letter improperly failed to disclose that the statute of limitations had run on the debts, thus barring legal action, and that any payment she might make could revive the debts. The complaint fails to plausibly claim a violation of the FDCPA.

The complaint contains insufficient factual allegations regarding the statute of limitations issue to survive this motion. It includes a vague reference to the year in which the debts accrued, followed by the year in which the statute of limitations allegedly ran, but fails to identify the statute of limitations that applies. "Without this requisite information, Plaintiff's claim that the debt in question is time barred is an unadorned legal conclusion." *Hollander v. Alliant Capital Mgmt., LLC,* No. 18-CV-2808, 2019 WL 1471086, at *2 (E.D.N.Y. Mar. 31, 2019). Even assuming the complaint had adequately alleged that the debts were time-barred, the lack of disclosure of that status on the Letter sent here does not violate the FDCPA.

The Second Circuit has not addressed whether the failure of a letter to disclose that legal action on a debt is time-barred constitutes an FDCPA violation. *See Hollander,* 2019 WL 1471086, at *2. "Circuit courts that have addressed a debt collector's duty under the FDCPA to

9

disclose the time barred status of a debt have done so only in the context of collection letters that contain settlement offers or threaten litigation." *Id.,* *2 n.1 (citing cases). Plaintiffs acknowledge the lack of a decision from the Second Circuit, but contend that the case law in other circuits supports denial of Defendants' motion.

There is a split in the circuit courts concerning "whether a collection letter offering 'settlement' of a time-barred debt can violate the FDCPA if the debt collector does not disclose the debt's unenforceability or expressly threaten litigation." *Daugherty v. Convergent Outsourcing, Inc.,* 836 F.3d 507, 511 (5th Cir. 2016). Most Circuits addressing the question have found that an offer to settle or resolve a time-barred debt is sufficient to plausibly state a claim even in the absence of an express threat of litigation. *See id.* ("a collection letter that is silent as to litigation, but which offers to 'settle' a time-barred debt without acknowledging that such debt is judicially unenforceable, can be sufficiently deceptive or misleading to violate the FDCPA"); *see also Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1271 (11th Cir. 2019); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 428-30 (3d Cir. 2018); *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399-400 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020-21 (7th Cir. 2014). The minority position requires a threat of litigation to accompany a settlement offer in order for the communication to be actionable under the FDCPA. *See Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001) ("in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid"). Thus, the question examined in other circuits was whether the inclusion of a settlement offer regarding a time-barred debt *by itself* could support a claim in the absence of a threat of litigation. This Court

10

need not address the issue or theorize which approach to take, however, since the Letter refers to neither a settlement offer nor a threat of litigation.

The Letter includes no language that the least sophisticated consumer could plausibly interpret as a settlement offer, demand for payment, or a threat of litigation.  The mere mention of the "Current Balance" alone does not suffice, particularly in the absence of any method to effectuate any payment such as a payment coupon, direction indicating how and where to submit payment, or reference to a payment website.  Even the least sophisticated consumer would not view the Letter's invitation to call and "discuss further" to be a settlement offer.

Generally, "a creditor can seek voluntary payment of a time-barred debt." *Holzman,* 920 F.3d at 1270.  The violation of the FDCPA occurs when the letter's statements "could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable." *Daugherty,* 836 F.3d at 509.  Plaintiff has offered no authority for the proposition that every communication from a debt collector regarding a time-barred debt must disclose that fact to the consumer.  In short, while there may be circumstances were a debt collector's silence regarding the expiration of the statute of limitations on a debt may be actionable under the FDCPA, the current case does not present such a situation.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings, DE [21], is granted.  The Clerk of the Court is directed to close the case.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
       May 15, 2020

11